William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
SHELDON HERBERT, BENJAMIN DAVIS,      :     ECF
JUSTYN MARTINDALE,                    :
Individually and on Behalf of All Other      :     18 Civ. _____
Persons Similarly Situated,           :
                                      :
                    Plaintiffs,       :
                                      :     **COMPLAINT AND**
      -against-                       :     **JURY DEMAND**
                                      :
GO NEW YORK TOURS INC., ASEN KOSRADINOV,  :
MICHAEL LONDON, ALON BRAND,           :
and JOHN DOES #1-10,                  :
                                      :
                    Defendants.       :
-----------------------------------------------------------------------X

     Plaintiffs SHELDON HERBERT, BENJAMIN DAVIS, and JUSTYN MARTINDALE

("Plaintiffs"), on behalf of themselves individually, and as class representatives of other

employees similarly situated, by and through their attorney, complain and allege for their

complaint against GO NEW YORK TOURS INC., ASEN KOSRADINOV, MICHAEL

LONDON, ALON BRAND, and JOHN DOES #1-10 (together "Defendant" or "Defendants") as

follows:

## <u>NATURE OF THE ACTION</u>

     1.     Plaintiffs allege pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

216(b) et al., that they and a Class of other similar bus station/boat dock supervisor employees

were paid by a fixed weekly salary and/or were paid hourly but not paid for all hours worked and

were illegally misclassified as exempt from the FLSA and not paid federal minimum and overtime wages.

2.     Plaintiffs allege that they and the Class members are: (i) entitled to unpaid wages from Defendant for work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 et seq.

3.     Plaintiffs further complain that they and other Class members are entitled to back wages from Defendants for minimum wages, overtime wages, and/or spread of hours premium pay, and punitive damages, as required by the New York Labor Law §§ 650 et seq. and the supporting New York State Department of Labor regulations.

4.     Plaintiffs also complain that Defendants failed to provide to them and the Class notice of each Class member's rate of pay and the name of each class member's employer in violation of the NYLL§ 195(1), and is therefore each Class member is entitled to $50 dollars for each workday in which the violations occurred or continued to occur on or after April 9, 2011, or a maximum total of $5,000, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

5.     Plaintiffs also complain that they and Class members' paystubs did not provide notice of the accurate hours worked by them and class members and their correct legal rate of pay and accordingly Plaintiffs and the class members, as a result of violations of the NYLL § 195(3), are each entitled to recover from Defendant $250 for each workday on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-d.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the

FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

## THE PARTIES

9.      Plaintiffs SHELDON HERBERT and BENJAMIN DAVIS at all relevant times,

were each an adult individual, residing in Bronx County in New York State.

10.     Plaintiff  JUSTYN MARTINDALE at all relevant times, was an adult individual,

residing in Queens County in New York State.

11.     Upon information and belief, Defendant GO NEW YORK TOURS INC.,

("Corporate Defendant") is a New York corporation, with its principal place of business at 2 East

42nd Street, New York, New York 10017.

12.     Upon information and belief, Defendants ASEN KOSRADINOV, MICHAEL

LONDON, ALON BRAND ("Individual Defendants") are officers, directors and/or managing

agents of the Corporate Defendant, whose address' are unknown at this time and who

participated in the day-to-day operations of the Corporate Defendant and acted intentionally and

maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations

promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the

regulations thereunder and are jointly and severally liable with the Corporate Defendant.

13.     Upon information and belief, ASEN KOSRADINOV, is the Chief Executive Officer of the Corporate Defendant, and has held this position during the last six years.

14.     Upon information and belief, ASEN KOSRADINOV, owns more than 10% of the Corporate Defendant and has owned more than 10% of the Corporate Defendant during the last six years.

15.     ASEN KOSRADINOV was mailed a notice of personal liability under the New York corporate law on June 16, 2018 addressed to 2 East 42nd Street, New York, New York 10017 and the notice was hand delivered to that location on June 18, 2017.

16.     Upon information and belief, MICHAEL LONDON owns more than 10% of the Corporate Defendant and has owned more than 10% of the Corporate Defendant during the last six years.

17.     Upon information and belief, ALON BRAND owns more than 10% of the Corporate Defendant and has owned more than 10% of the Corporate Defendant during the last six years.

18.     MICHAEL LONDON AND ALON BRAND were each mailed a notice of personal liability under the New York corporate law on June 16, 2018 addressed to 2 East 42nd Street, New York, New York 10017 and the notice was hand delivered to that location on June 18, 2017.

19.     Upon information and belief, during the last six years ("Individual Defendants' time period"), the Individual Defendants had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendant's bus station/boat dock supervisor  employees and other employees and their decisions directly affected the nature and condition of the home health care coordinator

employees' employment.

20.     Upon information and belief, during the Individual Defendants' time period, the Individual Defendants (1) had the power to hire and fire the bus station/boat dock supervisor employees of the Corporate Defendant, (2) supervised and controlled the bus station/boat dock supervisor employees' schedules and conditions of employment, (3) determined the rate and method of payment of the bus station/boat dock supervisor employees, and (4) maintained employment records related to the bus station/boat dock supervisor employees.

21.     Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

## COLLECTIVE ACTION ALLEGATIONS

22.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute her FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since the date 6 years prior to the filing of this Complaint (time tolled by failure to post notice and failure to provide notice of correct hours work and wage rate) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of

forty hours per workweek (the "Collective Action Members").

23.     Upon information and belief, Defendants failed to post notice in a conspicuous location that its employees had a right to minimum wages and overtime.

24.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

25.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

26.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, in as much as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

27.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

a.    whether the Defendant employed the Collective Action Members within the meaning of the FLSA;

b.    whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

c.    what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.    whether the Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

e.    whether Defendant failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.    whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

g.    whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.    whether Defendant should be enjoined from such violations of the FLSA in the future.

28.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

29.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

30.    Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendant at any time since the date six years prior to the filing of this Complaint, to the entry of judgment in this case (the "Class Period"), who were not paid all their straight time wages, minimum wages, spread of hour wages, and/or overtime wages and/or

7

were not provided the notices required by the Wage Theft Prevention Act (the "Class").

31.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of Class during the Class Period.

32.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

33.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

34.     Plaintiffs are committed to pursuing their action and have retained competent counsel experienced in employment law and class action litigation.

35.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

36.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    a.  whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

    b.  whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

    c.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

    d.   whether Defendant failed and/or refused to pay the members of the Class for all hours worked by them as well as premium pay for hours worked in excess of forty hours per workweek as well as spread of hours pay for hours worked a spread of more than ten hours, within the meaning of the New York Labor Law;

    e.   whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, interest, costs and disbursements and attorneys' fees; and

    f.   whether the Defendant should be enjoined from such violations of the New York Labor Law in the future.

## **STATEMENT OF FACTS**

**SHELDON HERBERT**

37.    Plaintiff SHELDON HERBERT ("Sheldon") was employed as a bus station/boat dock supervisor by Go New York Tours, Inc., Asen Kosradinov, Michael London, and Alon Brand (collectively "Defendants"), from about May 1, 2016 until March 16, 2018 (the "time period").

38.    Defendants operate a company that runs tour buses and boats in Manhattan.

39.    Go New York Tours Inc. has operated tour buses and boats in Manhattan during the last 6 years.

40.    Sheldon's duties, among others, were to manage customers at a bus stop or boat dock to ensure that they had tickets, to answer their questions, to sell them tickets, to communicate to them when the next bus would be arriving, to organize the customers in a line to be ready to board the buses, and to communicate with dispatchers the number of customers waiting to board the buses or boats and the occupancy of the buses or boats and the occupancy of the competitors' buses and/or boats.

9

41.     Sheldon's job responsibilities did not require any independent judgment, and Sheldon did not have the power to hire or fire employees or to direct the work of two or more employees of Defendants.  Also, Sheldon did not interview potential employees or participate in the hiring process and did not evaluate any employees.

42.     During the time period, Sheldon was generally paid a salary and was not paid any overtime premium for his hours worked over 40 hours in a week.

43.     Sheldon used a thumb time stamp machine to record the beginning and end of his shifts but often during the summer, the time stamp machine was broken.

44.     Sheldon generally worked approximately 9 hours per day, 6 days per week but during the busy summer months often worked double shifts equal to approximately 15 hours per day on 1-3 days a week.  Accordingly, Sheldon generally worked from about 52 hours per week to about 72 hours per week.

45.     Even when Sheldon was paid by the hour, the hours on his paystub generally did not reflect all the hours that he worked.

46.     Prior to Sheldon's termination, Sheldon complained to both Alon Brand and Michael London that his paystubs reflected less hours than he actually worked.

47.     Despite his complaints, Sheldon was not paid for all the hours that he worked and was not paid his proper overtime premium wages.

48.     Sheldon was eventually terminated on March 16, 2018 by Defendants in retaliation for his complaints about not getting paid wages for all his regular and overtime hours.

49.     Sheldon's termination was communicated to him by Michael London.

50.     Upon information and belief, during the last three years, Defendants hired at least 30 other similar bus stop/boat dock supervisors, who also were not paid for all their hours and

were not paid time and one half rate their regular rate for their hours over 40 in a week ("overtime hours").

51.     Throughout the time period, Defendant has likewise employed at least 30 other individuals, like Sheldon, in positions as bus stop supervisors.

52.     Throughout the time period, such individuals were paid by salary or were paid by the hour but were not paid time and one half for all their overtime hours worked and were not paid for all their hours worked.

**BENJAMIN DAVIS**

53.     BENJAMIN DAVIS ("Ben") was employed as a bus station/boat dock supervisor by Defendants from about May 1, 2016 until December 31, 2016 (the "Ben time period").

54.     Ben's duties, among others, were to manage customers at a bus stop or boat dock to ensure that they had tickets, to answer their questions, to sell them tickets, to communicate to them when the next bus would be arriving, to organize the customers in a line to be ready to board the buses, and to communicate with dispatchers the number of customers waiting to board the buses or boats and the occupancy of the buses or boats and the occupancy of the competitors' buses and/or boats.

55.     Ben's job responsibilities did not require any independent judgment, and Ben did not have the power to hire or fire employees or to direct the work of two or more employees of Defendants.

56.     Also, Ben did not interview potential employees or participate in the hiring process and did not evaluate any employees.

57.     During the Ben time period, Ben was generally paid a salary of at first $720 per week and then after about September 26, 2016 his salary increased to $749.84 per week.

58.     During certain weeks, Defendants paid Ben by the hour and in most of those weeks, Ben was not paid for all the hours that he worked.

59.     Ben was generally not paid any overtime premium for his hours worked over 40 hours in a week.

60.     Ben used a thumb time stamp machine to record the beginning and end of his shifts but often during the summer, the time record machine was broken.

61.     Ben generally worked approximately 6 days per week until about September 26, 2016 after which he generally worked 5 days per week but still worked 6 days when requested by Defendants.

62.     Ben generally worked a varied schedule that included the following shifts and sometimes a double shift: 8:00 am to 5:00 pm; 8:45 am to 6:30 pm (Battery Park bus shift); 10:00 am to 4:00 pm (boat shift); and 5:00 pm to 12:00 am midnight.

63.     Ben was not given any meal breaks.

64.     Ben generally worked at least 55 hours per week and at times many more hours.

65.     Even when Ben was paid by the hour, the hours on his paystub generally did not reflect all the hours that he worked.

66.     When Ben first started to be paid $720 per week, he complained to Alon Brand that he was not getting compensated fairly for his long hours. Alon responded by increasing Ben's salary to $749.84 and sometimes paying hourly but Defendants still did not always pay Ben for all his hours worked.

67.     Upon information and belief, during the last three years, Defendants hired at least 30 other similar bus stop/boat dock supervisors, who also were not paid for all their hours and were not paid time and one half rate their regular rate for their hours over 40 in a week

("overtime hours").

68.     Furthermore, Defendants did not provide paystubs with Ben's weekly checks or with the checks to employees similar to Ben and did not provide Ben or similar employees weekly information regarding their weekly hours worked and rate of pay.

69.     Throughout the Ben time period, Defendant has likewise employed at least 40 other individuals, like Ben, in positions as bus stop/boat dock supervisors.

70.     Throughout the Ben time period, such individuals were paid by salary or were paid by the hour but were not paid time and one half for all their overtime hours worked.

**JUSTYN VALENTINE**

71.     JUSTYN MARTINDALE ("Justyn") was employed full time as a bus station/boat dock supervisor by Defendants from about April 1, 2016 until about January 1, 2017 when he went to college, and then from about June 1, 2017 (when he finished his college courses and returned to full time work) until February 15, 2018 (together the "Justyn time period").

72.     Justyn's duties, among others, were to manage customers at a bus stop or boat dock to ensure that they had tickets, to answer their questions, to sell them tickets, to communicate to them when the next bus would be arriving, to organize the customers in a line to be ready to board the buses, and to communicate with dispatchers the number of customers waiting to board the buses or boats and the occupancy of the buses or boats and the occupancy of the competitors' buses and/or boats.

73.     Justyn's job responsibilities did not require any independent judgment, and Justyn did not have the power to hire or fire employees or to direct the work of two or more employees of Defendants.  Also, Justyn did not interview potential employees or participate in the hiring process and did not evaluate any employees.

13

74.     During the time period up to about January 1, 2017, Justyn was generally paid a salary of about $720 and was not paid any overtime premium for his hours worked over 40 hours in a week.

75.     Justyn used a thump time stamp machine to record the beginning and end of his shifts but often during the summer, the time record machine was broken.

76.     Justyn generally worked approximately 10 hours per day from 9:00 a.m. to 7:00 p.m., 6 days per week equal to 60 hours per week but also often worked until 8:00 p.m. when working as a boat dock supervisor as he was required to work until the last boat finally returned.

77.     Justyn also twice worked 7 days a week for more than 70 hours in those weeks.

78.     Even when Justyn was paid by the hour, the hours on his paystub generally did not reflect all the hours that he worked.

79.     Upon information and belief, during the last three years, Defendants hired at least 30 other similar bus stop/boat dock supervisors, who also were not paid for all their hours and were not paid time and one half rate their regular rate for their hours over 40 in a week ("overtime hours").

80.     Throughout the time period, Defendant has likewise employed at least 40 other individuals, like Justyn, in positions as bus stop/boat dock supervisors.

81.     Throughout the time period, such individuals were paid by salary or were paid by the hour but were not paid time and one half for all their overtime hours worked.

82.     Furthermore, Defendants did not provide paystubs with bus stop/boat dock supervisor employees' weekly checks and did not provide bus stop/boat dock supervisor employees weekly information regarding their weekly hours worked and rate of pay.

## CLAIM I
### (Fair Labor Standards Act)

83.    Plaintiffs repeat and reallege each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

84.    At all relevant times, Defendants have been and continue to be, employers

engaged in interstate commerce and/or the production of goods for commerce, within the

meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

85.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs

and each of the Collective Action Members within the meaning of the FLSA.

86.    Upon information and belief, at all relevant times, Defendants have had gross

revenues in excess of $500,000.

87.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C.

§216(b).  The named Plaintiffs' written consents are attached hereto and incorporated by

reference.

88.    At all relevant times, the Defendants had a policy and practice of refusing to pay

its employees minimum wages and/or overtime wages equal to time and one half their

employees' regular wages for hours worked over forty in a work week.

89.    As a result of the Defendants' willful failure to compensate its employees,

including Plaintiffs and the Collective Action members overtime wages and/or minimum wages

for all of their hours worked the Defendants have violated and, continue to violate, the FLSA, 29

U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

90.    As a result of the Defendants' failure to record, report, credit and/or compensate

its employees, including Plaintiffs and the Collective Action members, the Defendants have

failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

91.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

92.     Due to the Defendants' FLSA violations, Plaintiffs and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
(New York Labor Law)

93.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     At all relevant times, Plaintiffs and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

95.     Defendants willfully violated Plaintiffs' rights, and the rights of the members of the Class, by failing to pay them wages in violation of the New York Labor Law and its regulations.

96.     The Defendants' New York Labor Law violations have caused Plaintiffs and the members of the Class, irreparable harm for which there is no adequate remedy at law.

97.     Due to the Defendants' New York Labor Law violations, Plaintiffs and the members of the Class are entitled to recover from Defendants their unpaid wages, unpaid

minimum wages, unpaid overtime wages (including New York minimum overtime wages),

unpaid spread of hours wages, reasonable attorneys' fees, and/or costs and disbursements of the

action, pursuant to New York Labor Law §663(1) et seq.


## CLAIM III
### (Notice & Wage Statement Violations – NYLL §195)

98.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs as if they were set forth again herein.

99.    Defendants willfully violated Plaintiffs' rights by failing to provide proper notices

and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab. Law §

198(1-a) (enacted on April 9, 2011).

100.    Defendant has willfully failed to supply Plaintiffs and members of the Class with

the notice required by NYLL § 195(1), in English or in the languages identified by Plaintiffs as

their primary languages, containing their "rate or rates of pay and the basis thereof, whether paid

by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and

overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum

wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer

in accordance with [NYLL §191]; the name of the employer; any 'doing business as' names used

by the employer; the physical address of the employer's main office or principal place of

business, and a mailing address if different; the telephone number of the employer; plus such

other information as the commissioner deems material and necessary."

118.    Defendant has willfully failed to supply Plaintiffs and member of the Class

with  an accurate statement of wages as required by NYLL § 195(3), containing the "dates of

work covered by that payment of wages; name of employee; name of employer; address and

phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift,

day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and

overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours

worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and

net wages."

119.    Due to Defendant's violations of the NYLL§ 195(1), Plaintiffs and each member

of the Class is entitled to $50 dollars for each workday in which the violations occurred or

continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-b, as well as

reasonable attorneys' fees, costs, injunctive and declaratory relief.

120.    Due to Defendant's violations of the NYLL § 195(3), Plaintiffs and each member

of the Class is entitled to recover from Defendant $250 for each workday on or after April 9,

2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for

by NYLL § 198(1)-d.

### CLAIM IV
(Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Minimum
Wages, Overtime Wages and Spread of Hours)

101.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this

Complaint.

102.    Under the common law doctrine of "unjust enrichment" insofar as Defendants, by

their policies and actions, benefited from, and increased their profits and personal compensation

by failing to pay Plaintiffs and the Class all wages due for work performed including minimum

wages, overtime wages and spread of hours wages.

103.    Defendant accepted and received the benefits of the work performed by Plaintiffs

and the Class at the expense of Plaintiffs and the Class.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiffs' and the Class's labor, without paying all wages due.

104.    Plaintiffs and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendants, plus interest on these amounts and punitive/liquidated damages.

### CLAIM V
(Breach of Contract-Wages)

105.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

106.    Plaintiffs and the members of the class entered into contracts with the Defendant under which Plaintiffs and the members of the Class were to provide bus station/boat dock supervisor  services and Defendants were required to pay hourly wages as required by law.

107.    Plaintiffs and the members of the Class fulfilled their obligations under the contracts but Defendants failed to pay wages as required by law.

108.    As a result of Defendants' breach, Plaintiffs and the members of the Class are entitled to recover damages, plus interest.

### CLAIM VI
(FLSA - Discrimination and Retaliation by Plaintiff Sheldon Herbert)

109.    Plaintiff Sheldon Herbert ("Herbert") repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110.    Defendants terminated Plaintiff Herbert because he made a complaint alleging violations of the FLSA and the New York Labor Law against Defendants. The termination of

Plaintiff Herbert was a retaliation for Plaintiff Herbert's making his complaint that he was not being paid all his proper wages.

111.    By terminating Plaintiff Herbert, Defendants violated the FLSA, 29 U.S.C. §201 et seq.   Section 215 (a) (3) specifically states:

It shall be unlawful for any person—

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 USCS §§ 201 et seq., generally; for full classification, consult USCS Tables volumes], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

112.    Due to Defendants' illegal termination of Plaintiff Herbert, Plaintiff Herbert seeks and is entitled to recover from Defendants his unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to his former position, and reasonable attorneys' fees, and costs and disbursements of the action.

## <u>CLAIM VII</u>
(New York Labor Law - Discrimination and Retaliation by Sheldon Herbert)

113.    Plaintiff Herbert repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

114.    By terminating Plaintiff Herbert, Defendants violated New York Labor Law §

215.  New York Labor Law § 215 states:

§ 215.  Penalties and civil action; employer who penalizes employees because of complaints of employer violations

1. No employer or his agent, or the officer or agent of any corporation, shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or to the commissioner or his authorized representative, that the employer has violated

any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter, or because such employee has testified or is about to testify in an investigation or proceeding under this chapter. If after investigation the commissioner finds that an employer has violated any provision of this section, the commissioner may, by an order which shall describe particularly the nature of the violation, assess the employer a civil penalty of not less than two hundred nor more than two thousand dollars. Notwithstanding the provisions of section two hundred thirteen of this chapter, the penalties set forth in this section shall be the exclusive remedies available for violations of this section.

2. An employee may bring a civil action in a court of competent jurisdiction against any employer or persons alleged to have violated the provisions of this section. The court shall have jurisdiction to restrain violations of this section, within two years after such violation, and to order all appropriate relief, including rehiring or reinstatement of the employee to his former position with restoration of seniority, payment of lost compensation, damages, and reasonable attorneys' fees. At or before the commencement of any action under this section, notice thereof shall be served upon the attorney general by the employee.

115.    Prior to the commencement of this claim, on June 21, 2018, Plaintiff Herbert served a copy of this Complaint upon the Attorney General of New York State.

116.    Due to Defendants' illegal termination of Plaintiff Herbert, Plaintiff seeks and is entitled to recover from Defendants his unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to his former position, and reasonable attorneys' fees, costs and disbursements of the action, and liquidated damages, pursuant to New York Labor Law § 663(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class, respectfully request that this Court grant the following relief:

a.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1),

(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

b.      An order tolling the statute of limitations;

c.      Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

e.      An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of unpaid wages, unpaid minimum wages and unpaid overtime compensation due under the FLSA and the New York Labor Law;

g.      An award of spread of hours damages equal to an additional hour of pay for each day on which a plaintiff worked a spread of more than ten hours;

h.      An award of statutory damages under the Wage Theft Prevention Act in the amount of $150 per week plus interest;

i.       An award of liquidated and/or punitive damages, as a result of the Defendants'

willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the

New York Labor Law;

j.      An award of lost wages, damages to compensate for emotional distress and

punitive damages as a result of Plaintiff Herbert's illegal termination;

k.      An award of statutory damages under the New York Wage Theft Prevention Act;

l.      An award of prejudgment and postjudgment interest;

m.      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

n.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        June 21, 2018

LAW OFFICE OF WILLIAM COUDERT RAND

_____
William Coudert Rand, Esq.
*Attorney for Plaintiff*, Individually and on
Behalf of All Persons Similarly Situated
501 Fifth Avenue, 15th Floor
New York, New York 10017
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com

<u>CONSENT TO BECOME PARTY PLAINTIFF</u>

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of
<u>Go New York Tours, Inc., Asen Kostradinov, Michael London, Alon Brand</u>  to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____    4/30/18    _Sheldon Herbert_____
Signature                           Date        Print Name

8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of ~~Michael London~~ ~~Go New York Tours, Inc. + Asen Kosradinov, Alan Brand~~ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____     _____     _____
Signature               Date         Print Name

8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Go New York Tours, Inc., Asen Kosradinov, Michael London, and Alon Brand** to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____          _____          Benjamin Davis
Signature                        Date     Print Name