UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHELDON HERBERT, BENJAMIN DAVIS, and JUSTYN MARTINDALE, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiffs, <br><br> -against- <br><br> GO NEW YORK TOURS, INC. and ALON BRAND, <br><br> Defendants. | 18 Civ. 5653 (AJN) |

**PARTIES' JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE, AND AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE INCENTIVE AWARD**

Dated: May 25, 2020

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078
Attorney for Plaintiffs

## Table of Contents

Table of Authorities ...................................................................................................... ii

I.    INTRODUCTION.............................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................1

III.  ARGUMENT.....................................................................................................2

    A.    It Is Appropriate To Certify the Settlement Class and Collective for Purposes...............2

    B.    The Settlement Meets the Standards for Judicial Approval of Class Action Settlements and Should Be Approved. ..................................................................................4

    C.    Likelihood of Success at Trial ......................................................................6

    D.    The Range of Possible Recovery and the Recovery Achieved .......................................7

    E.    The Complexity, Expense, and Duration of the Litigation .............................................9

    F.    The Substance and Amount of Opposition to the Settlement..........................................9

    G.    The Stage of Proceedings at Which Settlement Was Achieved ....................................10

    H.    The Notice Program Approved by the Court was Effectuated......................................11

IV.   CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED............................11

    A.    Negotiated Attorney's Fee Agreements Are Favored In Class Action Settlements .......12

    B.    The Quality Of Representation ......................................................................14

    C.    The Agreed-Upon Fee Is Reasonable Under a Lodestar Analysis ...............................15

    D.    Class Counsel's Expenses Were Reasonably and Necessarily Incurred.......................22

V.    CONCLUSION ...............................................................................................22

# Table of Authorities

Page(s)

**Cases**

*A.H. Phillips v. Walling*,
  324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) ............................................................. 21
*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................................................2, 11
*Andrews v. City of New York*,
  118 F. Supp. 3d 630 (S.D.N.Y. 2015) ................................................................................. 15
*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
  2002 WL 1315603 (S.D.N.Y. June 17, 2002)...................................................................... 16
*Barrentine v. Arkansas-Best Frgt. Sys., Inc.*,
  450 U.S. 728, 101 S. Ct. 1437, 67 L.Ed. 2d 641 (1981) ...................................................... 19
*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. (S.D. Fla. 1988) ...............................................................................................5, 6
*Berry v. School Dist. of City of Benton Harbor*,
  184 F.R.D. 93 (W.D. Mich. 1998) ......................................................................................... 7
*Capsolas v. Pasta Resources, Inc.*,
  No. 10 Civ. 5595 (RLE), 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ................. 2
*Carroll v. United Compucred Collections, Inc.*,
  399 F.3d 620 (6th Cir. 2005).................................................................................................. 2
*Cohan v. Columbia Sussex Mgmt., LLC*,
  2018 U.S. Dist. Lexis 170192 (Sept. 28, 2018) .................................................................. 17
*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977).............................................................................................5, 6
*Cowan v. Prudential*,
  728 F. 2d (2d Cir. 1991) ....................................................................................................... 18
*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).............................................................................................19, 20
*Douglas v. Spartan Demolition Co. LLC*,
  2018 U.S. Dist. LEXIS 163387 (S.D.N.Y. Sept. 21, 2018).................................................. 17
*Escobar v. Fresno Gourmet Deli Corp.*,
  2016 WL 7048714 (S.D.N.Y. Dec. 2, 2016) ....................................................................... 15
*Fisher v. SD Protection Inc.*,
  948 F.3d 593 (2d Cir. 2020)................................................................................................. 18
*Gierlinger v. Gleason*,
  160 F. 3d 858 (2d Cir. 1998)................................................................................................ 17
*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................................ 15, 17, 18, 20, 21
*Grant v. Martinez*,
  973 F. 2d 96 (2d Cir. 1997).................................................................................................. 18
*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).............................................................................................. 2

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ............................................................................................ 12

*Hicks v. Morgan Stanley & Co*.,
　01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ..................... 22

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
　127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...........................................................................17, 19

*In re Continental Illinois Securities Litigation*,
　962 F.2d 566 (7th Cir. 1992)................................................................................. 13

*In re Copley Pharmaceutical, Inc*.,
　1 F. Supp. 2d 1407 (D. Wy. 1998) ....................................................................... 15

*In re Gilat Satellite Networks, Ltd*.,
　2007 WL 2743675, n.41 (E.D.N.Y. Sept. 18, 2007) .............................................. 21

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig*.,
　55 F. 3d 768 (3d Cir. 1993)......................................................................9, 10, 11

*In re King Res. Co. Sec. Litig*.,
　420 F. Supp. 610 (D.Colo. 1976) .......................................................................... 6

*In re Lupron® Mktg. & Sales Practices Litig*.,
　No. 01-cv-10861-RGS, 2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) ................ 14

*In re MDC Holdings Sec. Litig*.,
　[1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474 ................................... 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
　187 F.R.D. 465 (S.D.N.Y. 1998)............................................................................ 17

*In re Orthopedic Bone Screw Products Liab. Litig*.,
　176 F. R. D. 158 (E.D. Pa. 1997) ......................................................................... 10

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
　148 F.3d 283 (3d Cir. 1998)..........................................................................2, 9, 10

*In re Prudential Sec. Inc. Ltd. P'ships Litig*.,
　985 F. Supp. 410 (S.D.N.Y. 1997) ....................................................................... 19

*In re Sumitomo Copper Litig*.,
　74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................... 21

*In re United States Oil and Gas Litig*.,
　967 F.2d 489 (11th Cir. 1992)................................................................................. 4

*In re Warner Comms. Sec. Litig*.,
　618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................... 15

*In re Worldcom, Inc. ERISA Lit*.,
　339 F. Supp. 2d 561 (S.D.N.Y. 2004) .................................................................. 17

*Johnson v. Brennan*,
　2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)................................... 16, 20, 21, 22

*Johnson v. Georgia Highway Express, Inc*.,
　488 F.2d 714 (5th Cir. 1974).................................................................................. 13

*Kassim v. City of Schenectady*,
　415 F.3d 246 (2d Cir. 2005)................................................................................... 18

*Khait v. Whirlpool Corp*.,
　2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ...................................................... 22

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc*.,
　671 F. Supp. 819 (D. Mass. 1987)......................................................................... 12

*Malchman v. Davis,*
   761 F.2d 893 (2d Cir. 1985)...................................................................... 13
*Maley v. Del Global Tech. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................... 14
*Manners v. American General Life Ins. Co.,*
   1999 U.S. Dist. LEXIS 22880 (M.D. Tenn.,  Aug. 11, 1999) ....................... 7
*McBean v. City of New York,*
   233 F.R.D. 377, 2006 U.S. Dist. LEXIS 5003 (S.D.N.Y. 2006) ................... 14
*Orchano v. Advanced Recovery, Inc.,*
   107 F. 3d 94 (2d Cir. 1997).......................................................................... 18
*Paredes v. J & B Cleaners, Inc.,*
   18-CV-1638, 2018 WL 2461274 (S.D.N.Y. June 1, 2018)............................ 15
*Quartino v. Tiffany & Co.,*
   166 F. 3d 422 (2d Cir. 1999)....................................................................... 18
*Ressler v. Jacobson,*
   822 F. Supp. 1551 (M.D. Fla. 1992) ............................................................. 7
*Ruiz v. McKaskle,*
   724 F.2d 1149 (5th Cir. 1984)....................................................................... 5
*Siegel v. Bloomberg L.P.,*
   13 Civ. 1352 (DF), 2016 WL 1211849 (S.D.N.Y. Mar. 22, 2016) ............... 17
 *Steinberg v. Nationwide Mut. Ins. Co.,*
   612 F. Supp. 2d 219 (E.D.N.Y. 2009) ........................................................ 20
*Steiner v. Williams,*
   99 Civ. 10186 (JSM), 2001 WL 604035 (S.D.N.Y. 2001) ........................... 17
*Strougo v. Bassini,*
   258 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................ 17
*Susquehanna Corp. v. Korholz,*
   84 F.R.D. 316 (N.D. Ill.1979)........................................................................ 6
*Taft v. Ackermans,*
   2007 WL 414493 (S.D.N.Y. Jan 31, 2007) ................................................ 20
*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,*
   Master File No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004) ............................................................................ 18
*Velandia v. Serendipity 3, Inc.,*
   2018 U.S. Dist. Lexis 116594 (July 12, 2018 S.D.N.Y.) ............................. 17
*Villanueva v. 179 Third Ave. Restaurant Inc.,*
   2018 U.S. Dist. Lexis 116379 at *8 (S.D.N.Y.  July 12, 2018)...............12, 16
*Williams v. First Nat'l Bank,*
   216 U.S. 582 (1910) ..................................................................................... 4
*Young v. Katz,*
   447 F.2d 432 (5th Cir. 1971).......................................................................... 6

**Statutes**

28 U.S.C. § 1715........................................................................................... 11
29 U.S.C. 216(b) ...........................................................................1, 2, 12, 20
42 U.S.C. § 1983........................................................................................... 18

N.Y. Lab. Law §198..................................................................................................... 12

**Rules**

Rule 23 ........................................................................................... 1, 2, 3, 5, 12, 20

**PLAINTIFFS' MOTION ON CONSENT FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE, AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE INCENTIVE AWARD**

Plaintiffs SHELDON HERBERT, BENJAMIN DAVIS, and JUSTYN MARTINDALE ("Plaintiffs" or "Named Plaintiffs") apply to this Court for Final Approval of Settlement, Certification of Settlement Class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Certification of the Settlement Collective pursuant to 29 U.S.C. 216(b), An Award of Attorney's Fees and Expenses, and a Representative Incentive Award in this class / collective action wage litigation as more specifically set forth previously in the Joint Application for Preliminary Approval ("Motion for Preliminary Approval").

## I.    INTRODUCTION

Plaintiff submits this memorandum in support of this motion for formal approval of the settlement reached in this litigation.  By order dated January 31, 2020, the Court granted preliminary approval to the settlement and conditionally certified this matter as a class action ("Preliminary Order").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Agreement creates a common fund of fifty-seven thousand nine hundred sixty-five dollars ($57,965.00) to settle claims against the Defendants (the "Settlement Fund").  *See* Agreement § 3; Ex. A to Rand Decl. (Settlement Agreement).  The notice of class settlement was mailed to class members and no member has objected or opted out of the class.  The details of the procedural background are in the Declaration of William C. Rand.

1

### III.    ARGUMENT

### A.  It Is Appropriate To Certify the Settlement Class and Collective for Purposes of the Settlement

Certification of the Settlement Class and Collective is appropriate to effectuate a settlement of Plaintiff's and Settlement Class Members' claims against Defendants.  Indeed, the benefits of the Settlement can be realized only through the certification of a Settlement Class, and the Supreme Court of the United States has emphatically confirmed the viability of such settlement classes. *See e.g., Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).  So, too, have the federal appeals courts. *See e.g., Carroll v. United Compucred Collections, Inc*., 399 F.3d 620, 625-626 (6th Cir. 2005); *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998); *Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998).

As detailed in the Motion for Preliminary Approval, the Settlement Class and Collective readily meets the criteria of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

The parties seek final approval of the settlement of the FLSA wage and hour claims.  FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation. 29 U.S.C. § 216(b). Because employees who do not opt-in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See Capsolas v. Pasta Resources, Inc*., No. 10 Civ. 5595 (RLE), 2012 U.S. Dist. LEXIS 144651, at *18-19 (S.D.N.Y. Oct. 5, 2012). Thus, the high standard for approval of a class settlement does not apply to an FLSA settlement.   "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id*. at *19. "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. The settlement in this case was the result of

2

vigorously contested litigation and arm's-length negotiation. It is thus fair and reasonable and should be approved.

The parties also seek final approval of the settlement of the wage and hour New York State Law class claims. The Class is sufficiently numerous, the commonality requirement also is easily met, as is typicality. The claims of the representative Plaintiffs and each of the Class Members is predicated on the alleged failure of Defendants to pay them minimum, regular and/or overtime wages. In order to prevail, therefore, the named Plaintiff and each member of the Class will be required to make the same factual presentation and legal argument with respect to the common questions of liability, regardless of the individual circumstances which may affect their ability to prove individual causation and amount of damages on an individualized basis.

The adequacy requirement also is satisfied easily. The representative Plaintiffs have zealously pursued the claims, and there is no potential for conflicting interests in this action. The Plaintiffs possess the same interests and have suffered the same injury as other Class Members. Plaintiffs and Class Members are seeking to vindicate identical interests. At the same time, Class Counsel has diligently pursued the interests of Plaintiffs and the Class. Class Counsel is a well-regarded member of the legal community, has broad experience in class action lawsuits and, in particular, has broad experience in complex wage and hour litigation.

The predominance requirement of Rule 23(b)(3) is met as well. For example, all of Plaintiffs' and Class Members' claims for compensatory relief are founded upon a common legal theory of Defendants' failure to comply with the NY Labor Law and/or the FLSA. Here, where Plaintiffs' and the Class Members' claims are premised upon their employment by Defendants and alleged labor law violations, and where each has the opportunity to obtain the same type of relief

under the Settlement or to exercise the right to pursue litigation outside the Settlement, there can be little doubt that predominance is sufficiently demonstrated and that certification is appropriate.

Finally, it is clear that resolution of the Plaintiff's and Settlement Class Members' Claims by class wide settlement is superior to individual adjudication of the Settlement Class Members' claims for compensatory relief.  In particular, the Settlement provides Plaintiffs and Settlement Class Members with an ability to obtain predictable, certain and defined compensatory relief promptly and contains well defined administrative procedures to assure due process in the application of the Settlement to each individual claimant including, the right to "opt-out."  By contrast, individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the injured Plaintiff and Settlement Class Members will obtain necessary and timely compensatory relief at the conclusion of the litigation process.  Settlement also will relieve judicial burdens that would be caused by repeated adjudication of the same issues in many individualized trials against Defendants.

For these reasons, and given that the Court already has conditionally certified the Settlement Class, the Court should finally certify the Settlement Class.

   **B.  The Settlement Meets the Standards for Judicial Approval of Class Action Settlements and Should Be Approved.**

The Settlement before this Court, reached through arms-length negotiations, resolves this dispute and provides Settlement Class Members with relief that potentially equals or surpasses what could be achieved through trial.  The Settlement should therefore be readily approved by the Court, especially considering the well-settled policy favoring the settlement of cases.  *Williams v. First Nat'l Bank*, 216 U.S. 582, 585 (1910) ("[c]ompromises of disputed claims are favored by the courts.").  This policy applies with particular force to class-action lawsuits, the complexity and expenses of which impose special burdens borne by the judicial system as well as the litigants.  *In*

*re United States Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *see also, Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice…" *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 538 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class-action settlement. "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find the settlement is fair, adequate and reasonable and not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330. In reaching this determination, the "inquiry should focus upon the terms of the settlement," together with "an analysis of the facts and the law relevant to the proposed compromise." *Id.* Specifically, the settlement terms should be compared "with the likely rewards the class would have received following a successful trial of the case," subject to qualifications. *Id.*

"First, the courts, including those in this Circuit, have continuously stressed that it should not be forgotten that compromise is the essence of settlement." *Id.* As a result, in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, "the trial judge ought not try the case in the settlement hearings," nor should the court "make a proponent of a proposed settlement justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained…." *Id.* To the contrary, "the court must be mindful that inherent in compromise is a yielding of absolutes and an abandonment of highest hopes." *Ruiz v.*

5

*McKaskle*, 724 F.2d 1149 (5th Cir. 1984); *see also, Young v. Katz*, 447 F.2d 432, 433 (5th Cir. 1971) (explaining that a mini-trial on the underlying merits for purposes of approving a settlement "would emasculate the very purpose for which settlements are made").

Second, courts have consistently stressed that in evaluating a settlement in light of the risk of continued litigation, the district court "is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330; *See also Behrens*, 118 F.R.D. at 539 ("The Court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel"). "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D.Colo. 1976). Third, the courts have stressed that "litigants should be encouraged to determine their respective rights between themselves," and that "[t]here is an overriding public interest in favor of settlement." *Cotton*, 559 F.2d at 1331.

Finally, in considering the merits of the Settlement, the Court should take into account practical considerations such as the complexity of the case and the expense and likely duration of the litigation. *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 322 (N.D. Ill.1979). One of those practical considerations is the vagaries of litigation and the benefits of an immediate recovery as compared "to the mere possibility of relief in the future, after protracted and expensive litigation." *In re King Resources*, 420 F. Supp. at 625. In this respect, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.*

### C.  Likelihood of Success at Trial

 Class Counsel has built a case with a likelihood of success at trial. However, as with any litigation, especially class action litigation, were this case to proceed to trial, there is the risk and uncertainty that Plaintiff and the Class might not prevail on their claims and/or that their claims would not survive an appeal. Here, Plaintiffs' claims rely in part on their testimony as to how

many hours they worked.  Accordingly, there is a material risk that Plaintiffs might not have prevailed at trial.

Therefore, consideration of this factor supports the approval of this Settlement. Furthermore, it would take a significant amount of time to reach the trial, and appeals would inevitably follow, causing additional delay.

### D.  The Range of Possible Recovery and the Recovery Achieved

"A court must balance the amount offered in settlement against the strength of the class action suit." *Whitford v. First Nationwide Bank*, 147 F.R.D.135,143 (W.D.Ky. 1992).  Indeed, "[O]ne of the most important factors in assessing the fairness of a settlement agreement is the strength of the plaintiff's case on the merits balanced against the relief offered in the settlement." *Manners v. American General Life Ins. Co*., 1999 U.S. Dist. LEXIS 22880 AT * 55 (M.D. Tenn., Aug. 11, 1999) (*Quoting Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93,98 (W.D. Mich. 1998.  In making this determination, the Court should make only a "limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Id.* (*quoting Ressler v. Jacobson*, 822 F. Supp. 1551,1553 (M.D. Fla. 1992)).

### 1. Calculation of Settlement Amounts and Range of Damages

The Settlement Agreement creates a common fund of fifty-seven thousand nine hundred sixty-five dollars ($57,965.00) to settle claims against the Defendants (the "Settlement Fund"). *See* Agreement § 3; Ex. A to Rand Decl. (Settlement Agreement). The Settlement Fund covers settlement amounts for the Class Members, settlement amounts for the individual claims of the Plaintiffs, and attorneys' fees and costs. *Id.*

As the class consists of 13 persons, the parties were able to calculate the precise amount of unpaid overtime, which totaled $14,018.45. Accordingly, the settlement amount to the Class

Members ($17,500.00) more than compensates the Class Members for overtime payments due and in fact represents a 25% total increase on the amount of overtime that they would have received. Indeed, because of the modest number of Class Members, the parties were able to create an allocation formula that equitably compensates Class Members based on the number of hours actually worked by each individual Class Member. The overtime hours of each Class Member was calculated by adding the total number of overtime hours worked during the Relevant Period by the Class Member, except that in any week in which there is less than four hours of overtime, the Class Members shall be credited with four hours of overtime for that week. The remainder of the funds left in the Settlement Fund after the deduction of this calculation for all Class Members, the payment of attorneys' fees, and the payment of the individual settlement amounts to Plaintiffs will then be distributed proportionally between Class Members. A list of Class Members and the amount of each Settlement Check by Class Member is attached as Exhibit A to the Agreement.

### 2. Separate Individual Claims of Named Plaintiffs

In addition to the payments that they will receive under the allocation formula described supra, Defendants agree to pay the Plaintiffs as follows to settle their individual claims: Sheldon Herbert shall receive seven thousand five hundred dollars ($7,500.00); Justyn Martindale shall receive five thousand dollars ($5,000.00); and Benjamin Davis shall receive three thousand five hundred dollars ($3,500.00). Defendant Herbert was due $1,120.75 in overtime payments, Defendant Martindale was not due any overtime payments, and Defendant Davis was due $452.17 in overtime payments. The additional settlement amounts were negotiated to compensate them for their separate individual claims for unpaid hours worked, which were off the clock or for which no records were kept and to compensate Sheldon for his retaliation claim alleging that he was terminated for complaining about not getting paid for all his hours worked. These settlement amounts are fair because (a) Defendants denied the individual claims, (b) there was no definitive

evidence proving or disproving the claims which relied predominantly on testimony and (c) the parties individually negotiated these amounts over a period of weeks involving offers and counter offers.

### E.  The Complexity, Expense, and Duration of the Litigation

The complexity, expense, and likely duration of the litigation are major factors to be considered in evaluating the reasonableness of a settlement.  "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F. 3d 768, 812 (3d Cir. 1993).  It is undeniable that were this litigation to continue, Defendants would actively and aggressively litigate this action, conceding nothing, and asserting their various affirmative defenses.  Thus, the costs of proving the case against the Defendants would be substantial, and absent final approval of the Settlement, these costs would quickly escalate.

Accordingly, the complexity and expense of this litigation, and the expected duration of advancing the case to trial and through appeal in the absence of settlement weigh heavily in favor of final approval of the Settlement.  *See e.g., In re Prudential*, 148 F.3d. ("The court found that litigation would require expensive and time consuming discovery, would necessitate the use of several expert witnesses, and would not be completed for years.  Consequently, the court concluded this factor weighed in favor of settlement.  We agree.").  The proposed Settlement grants Class / Collective Members timely relief without their having to endure the risk, complexity, duration and expense inherent in continuing this action.

Accordingly, this factor is satisfied.

### F.  The Substance and Amount of Opposition to the Settlement

This factor "attempts to gauge whether the members of the class support the settlement." *See e.g., In re Prudential*, 148 F. 3d at 318.  Importantly, Settlement Class Members' due process

rights were fully protected, as their right to opt out and object of the Settlement was made a conspicuous part of the Settlement Agreement and Notice. Zero Settlement Class Members opted out of the Settlement, suggesting that Settlement Class Members view the Settlement Agreement as eminently fair, reasonable and adequate. In addition, there have been no objections. When determining the measure of the class' reaction to a settlement, the Court must look to the number and "vociferousness of the objectors." *In re GM Trucks*, 55 F. 3rd at 812. *See, In re Orthopedic Bone Screw Products Liab. Litig*., 176 F. R. D. 158, 185 (E.D. Pa. 1997) ("What is meaningful in this regard is that the relatively low objection rate militates strongly in favor of approval of the settlement."). Accordingly, this factor is readily satisfied.

### G. <u>The Stage of Proceedings at Which Settlement Was Achieved</u>

This factor requires the court to analyze the stage of the proceedings to determine "the degree of case development that …counsel have accomplished prior to the settlement." *GM Trucks*, 55 F. 3d at 813. "In assessing this factor, the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." (citations omitted). Essentially, the Court must ensure that the settlement agreements are not the product of a quick and uninformed decision-making process. *Id*.

This factor is unequivocally satisfied given Class Counsel's activities prior to entering into the Settlement Agreement. Prior to the settlement the parties exchanged discovery requests and responses which included hundreds of pages of documents. During the period leading up to the signing of the Settlement Agreement, Plaintiffs' Counsel, among other things, communicated with the Plaintiffs about the nature of the litigation, and analyzed the evidence adduced during pretrial proceedings and settlement negotiations.

Indeed, Class Counsel's efforts justify a finding that the parties had more than an "adequate appreciation of the merits of the case before negotiating." *In re Prudential*, 148 F. 3d at 319 (citing

*GM Trucks*, 55 F.3d at 813).  Thus, the concern noted in *Amchen* – concerning the vulnerability of a settlement claim – where the parties had not been put to the test of a vigorous adversarial process in shaping their position at the bargaining table is not at issue here.  *Amchen Prods.*, 521 U.S. at 601, 620.  In this case, the adversarial process was stretched to its maximum throughout the litigation and negotiation period.

Because the Settlement was reached after painstaking work and analysis, this factor is met.

### H.  The Notice Program Approved by the Court was Effectuated

The Settlement Claims Administrator met all of the obligations with regard to Notice as set forth in this Court's Order of Preliminary Approval and the Settlement Agreement.  Under the program approved by the Court and carried out by the parties, the Notice given was the best means of Notice that was practicable under the circumstances.

On or about February 19, 2020, the Settlement Claims Administrator compiled a list with all of the names, last known addresses, and last known telephone numbers of the Class Members, as provided by Go New York. *See* Declaration of Sarah E. Sears (hereinafter "Sears Decl."). On or about February 26, 2020, 13 Court-Authorized Notices of Class Action Settlement and Fairness Hearing and 13 Court-Authorized Notices of Collective Action Settlement were mailed by the Settlement Claims Administrator via United States Postal Service First Class postage. *Id.*  As of the date of this Motion, no Notices were returned by the U.S. Postal Service.

Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), defense counsel delivered appropriate CAFA notices, by Certified Mail more than ninety (90) days before the final approval hearing.  *See* Sears Decl.

### IV.    CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED

Under the Fair Labor Standards Act ("FLSA") and New York State Labor Law, a prevailing plaintiff is entitled to receive an award of reasonable attorneys' fees and costs from

defendants. *See* 29 U.S.C. §216 (b), N.Y. Lab. Law §198.  Here, Plaintiffs are prevailing plaintiffs

and should be awarded reasonable attorneys' fees.  Plaintiffs' Counsel seeks an award of twenty-

four thousand four hundred and sixty-five dollars ($24,465.00) for all of the work already

performed, and costs and expenses already incurred in this Litigation.  The fee is reasonable on a

lodestar basis as Class counsel's time spent on the case to date is 151.1 hours (not including time

to attend final settlement hearing), which at the reasonable rate of $450 per hour rate equals a

lodestar of $67.995.  The requested fee of $24,051.53 ($24,465 – expenses of $413.47) is

reasonable as it equals a multiplier of .35 which far less than 1. *See Villanueva v. 179 Third Ave.*

*Restaurant Inc*., 2018 U.S. Dist. Lexis 116379 at *8 (S.D.N.Y.  July 12, 2018) (J. Nathan) (where

lodestar multiplier is less than one, fee is deemed reasonable).  *See* time records attached as Ex. B

to the Rand Declaration.

## A. <u>Negotiated Attorney's Fee Agreements Are Favored In Class Action Settlements</u>

Rule 23(h) of the Federal Rules of Civil Procedure states: "In an action certified as a class

action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by

agreement of the parties." Fed. R. Civ. P. 23(h) (emphasis supplied).

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever

possible.  "A request for attorney's fees should not result in a second major litigation. Ideally, of

course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983);

*see also, In re MDC Holdings Sec. Litig*., [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶

95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should

be encouraged to settle all their disputes as part of the settlement… , including the amount of the

fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved

as part of the negotiated settlement between plaintiffs and defendants."); *M. Berenson Co. v.*

*Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves.") *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.")

> In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985)*, cert. denied*, 475 U.S. 1143 (1986).

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *Id*. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* "Markets know market values better than judges do." *Id*. at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." *Id.* at 572. Here, such a negotiation was feasible, and was conducted. The fee was negotiated at arm's

length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might award if the matter were litigated.

Thus, the negotiated fee is entitled to a presumption of reasonableness.

### B.  The Quality Of Representation

Class Counsel was well-qualified from the outset to pursue this case.  His professional background, qualifications and experience are set forth in the declaration of William C. Rand, Esq. submitted herewith and with the Motion for Preliminary Approval.  As shown by the declaration, Class Counsel has a great deal of experience in the prosecution and successful resolution of complex class actions, many involving the FLSA and NY Labor Law.

Courts routinely recognize the experience of class action counsel in determining the reasonableness of a fee award.  See *In re Lupron® Mktg. & Sales Practices Litig*., No. 01-cv-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14 (D. Mass. Aug. 17, 2005).  In addition, the quality of representation is commonly measured by the result obtained.  *Maley v. Del Global Tech. Corp*., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

Class Counsel's decision to avoid additional litigation costs and settle at this juncture also supports a finding of effective representation.  A business as usual approach to litigation, with motion practice and protracted discovery skirmishing would have resulted in cost and delay, but would not likely have resulted in greater benefits to the Settlement Class.  As a result, the Settlement Class was well-served by Class Counsel's decision to engage in early settlement discussions.  See *McBean v. City of New York*, 233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS 5003, at *17-18 (S.D.N.Y. 2006) (where all parties "agree upon the basic facts as they relate to the plaintiff class…class counsel's decision to forgo additional discovery in the hopes of minimizing

costs and achieving a quick recovery for their clients…falls within the bounds of 'effective representation'").

Finally, the quality of opposing counsel is also an important factor for the Court to consider in evaluating the quality of services provided by Class Counsel. *See e.g., In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985). Defendants were represented by Barton LLP, a prestigious boutique law firm that has a robust labor and employment practice, whose lawyers negotiated each issue, phrase and nuance contained in the settlement. As the Court stated in *In re Copley Pharmaceutical, Inc*., 1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998), "the skill required to perform the legal service presented by the instant case was great, particularly where class counsel were faced with opposing counsel of such high quality." Plaintiffs' counsel has proven equal to the task of working effectively and efficiently opposite Defendants' skilled counsel.

## C. <u>The Agreed-Upon Fee Is Reasonable Under a Lodestar Analysis</u>

"Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorney's fees and costs incurred in successfully prosecuting wage-and-hour actions." *Escobar v. Fresno Gourmet Deli Corp*., No. 16-CV-6816 (PAE), 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016). "Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees." *Andrews v. City of New York*, 118 F. Supp. 3d 630, 634-35 (S.D.N.Y. 2015).

To determine the reasonableness of the Plaintiffs' fee request, the Court looks to the six factors articulated by the Second Circuit in *Goldberger v. Integrated Res. Inc*., 209 F.3d 43, 50 (2d Cir. 2000). These factors include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. District courts continue to be guided by the *Goldberger* factors. *See, e.g., Paredes*

15

*v. J & B Cleaners, Inc.*, 18-CV-1638, 2018 U.S. Dist. LEXIS 92545, 2018 WL 2461274, at *1 (S.D.N.Y. June 1, 2018); *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, No. 96 CIV 0583, 2002 U.S. Dist. LEXIS 10732, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002).

First, this action has been ongoing for almost 2 years at this juncture and Class Counsel devoted tremendous time and labor to this case during that time, without any guarantee of recovery. That work entailed many items, including substantial investigation, research involving the exemptions to FLSA, the filing of a motion for collective action certification which was fully briefed, formal discovery, the review and analysis of hundreds of pages of employee pay records, and the negotiation and court approval of a complex class and collective settlement. The requested fees are also meant to compensate Class Counsel for time that will be spent administering the settlement into the future. *See Johnson v. Brennan*, 10 CIV 4712, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16, 2011). Class Counsel have already responded to inquiries regarding the settlement and expect to answer more questions from class members after final approval, particularly after checks are issued, and will incur additional expense accordingly. Id.

Class Counsels' fee request here is for $24,051.53.   This amount represents a lodestar multiplier of .35  (calculated as fee of $24,051.53/[151.1 hours*$450 per hour])), based on 151.1 hours and an hourly rate of $450 per hour which is reasonable given Rand's more than 20 years of experience. *See* Rand Decl. The time spent by Class Counsel is described in Rand's contemporaneous time records. Given the risk and complexity of this case, the .35 multiplier is within the range awarded by courts in the Second Circuit. *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 U.S. Dist. LEXIS 116379 at *8 (July 12, 2018 S.D.N.Y.) (where lodestar multiple is

less than one, "the Court need not assess the reasonableness of the rates charged, and finds the request for attorneys' costs and fees presumptively reasonable.").[1]

In determining the reasonable hourly rate, this Court must look to the current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F. 3d 858, 882 (2d Cir. 1998). The rate of $450 per hour for the lodestar analysis is reasonable given the complexity of the action and given Plaintiff's counsel's long experience prosecuting employments cases. *See* Rand Decl. *See Douglas v. Spartan Demolition Co. LLC*, 2018 U.S. Dist. LEXIS 163387 (Sept. 21, 2018 S.D.N.Y.) (finding $450 per hour reasonable rate for the work of attorney William C. Rand); *Siegel v. Bloomberg L.P.*, 13 Civ. 1352 (DF), 2016 U.S. Dist. LEXIS 38799, 2016 WL 1211849 at *5-*6 (S.D.N.Y. Mar. 22, 2016) (Freeman, M.J.) (awarding a $505 hourly fee to an attorney with 22 years of experience); *Velandia v. Serendipity 3, Inc.*, 2018 U.S. Dist. Lexis 116594 (July 12, 2018 S.D.N.Y.) (In restaurant case, "the "court stated that it "agrees that $500 per hour is an appropriate hourly rate for Mr. Pechman in this FLSA action."); *see Cohan v. Columbia Sussex Mgmt., LLC*, 2018 U.S. Dist. Lexis 170192 at *8 (Sept. 28, 2018) ("The requested fees are also meant to compensate Class Counsel for time that will be spent administering the settlement into the future."). In assessing the lodestar, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Instead, "the reasonableness of the

---

[1] This lodestar method of compensating attorneys has also been followed in this district. *Spann v. AOL Time Warner*, 02 Civ. 8238 (DLC) (2005 S.D.N.Y.); *In re Worldcom, Inc. ERISA Lit.*, 339 F. Supp. 2d 561 (S.D.N.Y. 2004); *In re Alloy Inc. Sec. Lit.*, 03 Civ. 1597 (S.D.N.Y. 2004); *Strougo v. Bassini*, 258 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *Steiner v. Williams*, 99 Civ. 10186 (JSM), 2001 WL 604035 (S.D.N.Y. 2001); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 431 (S.D.N.Y. 2001); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 484 (S.D.N.Y. 1998). Courts are to be guided by "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *In re Arakis Energy Corp. Sec. Litig.*, at *26 (quoting *Goldberger*, 209 F.3d at *50).

claimed lodestar can be tested by the court's familiarity with the case." *Id*.  Here, approval of the agreed-upon fee will not result in an excessive multiplier.

The case at bar is a fee shifting employment law case and, as such, any rule of proportionality that would tie an attorney fee award to the amount of damages recovered has been rejected by the Second Circuit. *See Fisher v. SD Protection Inc*., 948 F.3d 593, 603-05 (2d Cir. 2020) (rejecting 33% limit on fee). In *Fisher*, the Second Circuit held that there is no percentage maximum fee in a fee shifting FLSA wage case and stated:

> We conclude that the district court abused its discretion in two respects: First, the district court erred as a matter of law in concluding that the "maximum fee percentage" that counsel may be awarded in an FLSA suit is generally limited to 33% of the total settlement amount. *See App'x* at 78. Indeed, we have "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (discussing attorneys' fees in connection with a claim brought under 42 U.S.C. § 1983). Second, the district court abused its discretion in rewriting the parties' settlement agreement, and it erred in evaluating the fees portion of the settlement agreement as a separate fee application rather than as part of a complete settlement agreement. Accordingly, we vacate the district court's order and remand for further proceedings.

*Id*. at 602. *See Cowan v. Prudential*, 728 F. 2d 522 (2d Cir. 1991); *Grant v. Martinez*, 973 F. 2d 96,101 (2d Cir. 1997); *Orchano v. Advanced Recovery, Inc*., 107 F. 3d 94, 98-99 (2d Cir. 1997). *In Quartino v. Tiffany & Co*., 166 F. 3d 422, (2d Cir. 1999), the Second Circuit stated that "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N.*, *Ltd*., Master File No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004).  The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp*., 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted); *Am.Bank Note Holographics*, 127 F. Supp. 2d at 432-433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 985 F. Supp. 410, 417 (S.D.N.Y. 1997) (Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Class Counsel in prosecuting this class action. Here, Class Counsel vigorously negotiated a very substantial settlement for the class, and undertook this action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this action without a guarantee of compensation or even recovery of out-of-pocket expenses. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Class Counsel has not been compensated for any time or expenses since this case began. Moreover, Class Counsel would not have received any compensation or even reimbursement of expenses had this case not been successful. Finally, the class representatives did not simply cede to Defendants' first settlement offer. To the contrary, Class Counsel vigorously negotiated a very substantial settlement for the class.

Second, this is a complicated "hybrid" action brought under both the FLSA and the New York State wage and hour statutes. "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Frgt. Sys., Inc*., 450 U.S. 728, 743, 101 S. Ct. 1437, 67 L.Ed. 2d 641 (1981). "Among FLSA cases, the most complex type is the 'hybrid' action brought

here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Johnson v. Brennan*, 10 CIV 4712, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011).

Third, the risks of litigation were substantial here. "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Johnson*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17. Class Counsel has prosecuted this case on a contingency basis for almost 2 years - taking on the risk that they would not ultimately recover anything for their time and effort. "Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources." *Id*. (citation omitted). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id*. (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974)).

Fourth, the Court also looks to the quality of the representation on behalf of the Class Members. To make that determination, courts review, among other things, the backgrounds of the lawyers involved in the lawsuit and the recovery obtained. See *Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219, 223 (E.D.N.Y. 2009) (citing *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, 2007 WL 414493, at *10 (S.D.N.Y. Jan 31, 2007)). The quality of the representation in this litigation is evident from the record. Class counsel is a well-known class action employment lawyer who has extensive experience and special expertise in prosecuting and settling FLSA and NYLL wage and hour cases. *See* Rand Decl. The Second Circuit held in Goldberger that "the quality of representation is best measured by results, and . . . such results may

20

be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55 (internal quotation omitted).

Fifth, "[c]ourts also consider the size of the settlement to ensure that the percentage awarded does not constitute a 'windfall.'" *Johnson*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *18 (citing *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007)).  Here the fee is less than the lodestar so there clearly is no any windfall.

Sixth, as to public policy considerations, this factor weighs in favor of approval of Class Counsels' fee request. District courts and the Second Circuit "have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). As the court in Johnson observed:

> The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Willix*, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6; *deMunecas*, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *8; *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix*, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6; *deMunecas*, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *8; *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. Willix, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6; *deMunecas*, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *8; *McMahon*, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7; *see also Sand*, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

*Johnson*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *19; *Khait v. Whirlpool Corp.*,

No. 06-6381, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010).

### D.  Class Counsel's Expenses Were Reasonably and Necessarily Incurred

In addition to the time he spent, Plaintiffs' counsel incurred $413.47 are also reasonable as

they are direct out of pocket expenses for filing the complaint, serving individual notices of

liability.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and

customarily charged their clients."  *Hicks v. Morgan Stanley & Co*., 01 Civ. 10071 (RJH), 2005

U.S. Dist. LEXIS 24890, at *29 (S.D.N.Y. Oct. 24, 2005).  The declaration of Plaintiffs' Counsel

describes these expenses by category. These expenses were reasonably and necessarily incurred in

the prosecution of this action.

## V.    CONCLUSION

For the foregoing reasons, Class Counsel and Defense Counsel respectfully ask that the

Court grant and approve a final approval order and judgement in the form attached as Exhibit D to

the Rand Declaration.


Dated: New York, New York
       May 25, 2020


LAW OFFICE OF WILLIAM COUDERT RAND

S/William C. Rand
_____
William Coudert Rand, Esq. (WR-7685)
*Attorney for* Plaintiffs, Individually,
and on Behalf of All Other Persons Similarly Situated
501 Fifth Ave., 15th Floor
New York, New York 10017
Tel: (212) 286-1425